## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| **BRIAN PAIGE** )<br> )<br> **Plaintiff, individually and** )<br> **on behalf of all others** )<br> **similarly situated** )<br> )<br> )<br>**v.** )<br> )<br>**Bitconnect International PLC,** )<br>**Bitconnect LTD,** )<br>**Bitconnect Trading LTD,** )<br>**and Ryan Maasen.** )<br> )<br> )<br> )<br> **Defendants.** )<br>_____ ) | **Case No.: 3:18-cv-00058-JHM** |

## AFFIDAVIT OF JASPER D. WARD, IV

I, Jasper D. Ward IV, after being duly sworn, states as follows:

1. I am counsel for Plaintiff and the Class, and I have personal knowledge regarding the statements made in this Affidavit.

2. Bitconnect scammed thousands of Kentuckians and hundreds of thousands of Americans out of millions of dollars through a website called bitconnect.co.

3. Cryptocurrency is inherently volatile. Bitcoin, ETH and all cryptocurrency coins are volatile, unstable, subject to the whims of investors worldwide, and undergo huge price swings on a daily basis and across various different exchanges.

4. Against this backdrop, Bitconnect created a trading and lending platform that promised substantial, fixed returns and a complete return of principal at a fixed time in the future that benefited from volatility.

5. Bitconnect was both a pyramid scheme and a Ponzi scheme. In its scheme, Bitconnect required Plaintiff and the Class to provide Bitconnect with Bitcoin, which it would exchange for Bitconnect Coins ("BCC"). Investors were then told to "lend" their BCC back to Bitconnect to fund its secret, proprietary "volatility software." With these transactions, Bitconnect promised to Plaintiff and the Class fixed returns as well as a guarantee that the principal investment/loan amount would be paid in full on date certain.

6. Bitconnect published the following graphic on its website, which Plaintiff and the Class saw and relied upon, that stated:



7. Bitconnect touted the lending program investment on its website as a "safe way to earn a high rate of return on…investment[s] without having to undergo a significant amount of risk."

8. Bitconnect's promised of returns were bolstered by promoters and affiliates such as Maasen. Maasen published dozens of videos on YouTube.com, all of which he has taken down

2

and admitted that he has taken down, where he made numerous representations seen by, relied upon and that damaged Plaintiff and the Class.

9. These representations, while seemingly too good to be true for most investments, were in line with the rise of cryptocurrency trading and investing in 2017, and therefore were believable and concrete, and made it reasonable for Plaintiff and the Class to rely upon and believe these representations.

10. On January 4, 2018, the Texas State Securities Board issued an emergency cease and desist order against Bitconnect. On January 12, the North Carolina Order was issued.

11. On January 13, Bitconnect's website went down. According to Bitconnect's Twitter account, this was due to "server issues", which it then said were caused by an attack by unnamed people through a DDoS process (also known as "denial of service" attack). A few days later, the website was back up, but the lending program had been shut down.

12. Plaintiff and the Class logged on to find their entire account had been converted to BCC at a price of $363 each and that Bitconnect would no longer honor the promises for paying interest and return of principal in the lending program. The price of BCC plummeted on the exchanges when Bitconnect announced it had closed the trading platform. As of January 25, 2018, the price was down to $11.03.

13. Bitconnect intentionally misled Plaintiff and the Class, and intentionally withheld material facts about Bitconnect from Plaintiff and the Class, including, but not limited to, the following:

    a. The identity of the principals of Bitconnect and the true location of Bitconnect's operations and management;

    b. Information about the assets and liabilities of Bitconnect and any other information that indicates the means by which Bitconnect will provide investors with a guaranteed daily return, regardless of the value of Bitcoin;

    c. Information about the proprietary, secret trading system that it calls its "volatility software," details of its trading records and historical performance, proof of its existence, and the risk factors associated with its use;

    d. That the Bitconnect investments are securities and are not registered with the Administrator or any other governing regulator;

    e. That only registered dealers or agents can be paid commissions for referrals or sales of securities; and

    f. That affiliates who receive such commissions for their sale of Bitconnect investments without being properly registered are in violation of the Securities Act of 1933.

14. On January 25, 2018, Maasen posted a new video promoting Davor, another lending site that is exactly like Bitconnect. That video is available here: https://www.youtube.com/watch?v=az7vh1dGIpM.

15. Counsel has obtained what he believes to be an address in California for Bitconnect director Glenn Arcaro, and has sent a copy of Plaintiff's Motion for Temporary Injunction. However, Counsel has no contact information regarding the officers, directors, principals, or other managing agents of the Bitconnect Defendants despite trying to find this information. Indeed, the Bitconnect Defendants have intentionally hid this information from the public. Accordingly, counsel has not been able to provide the Bitconnect Defendants with notice of this Motion.

16. Counsel has obtained what he believes to be the home address for Maasen, and has sent him a copy of Plaintiff's Motion for Temporary Injunction.

17. Given the significant fraud exhibited by Defendants, waiting until all Defendants can be found and served may only serve to provide Defendants with additional time to dissipate their assets.

18. Indeed, it appears that already Maasen has begun to move his assets into another high-risk and likely fraudulent lending scheme like Bitconnect, which may compromise the ability for Plaintiff to obtain the equitable relief requested.

19. Time is of the essence to protect Plaintiff and the Class, and a temporary restraining order is necessary to ensure Plaintiff and the Class have the ability to receive the equitable relief to which they are entitled.

Dated this 29th day of January 2018.

Respectfully submitted,

**JONES WARD PLC**

*/s/ Jasper D. Ward IV*
Jasper D. Ward IV
Alex C. Davis
The Pointe
1205 E. Washington Street, Suite 111
Louisville, Kentucky 40206
T: (502) 882-6000
jasper@jonesward.com
alex@jonesward.com
*Counsel for Plaintiff and the Class*

                Abigale Rhodes Green
                ABIGALE RHODES GREEN INJURY LAW, PLLC
                1800 Kentucky Home Life Building
                239 S. Fifth Street
                Louisville, KY  40202
                (502) 736-8159
                agreen@arglawfirm.com
                *Counsel for Plaintiff and the Class*