## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| **Brian Paige** )<br>)<br>**Plaintiff, individually and** )<br>**on behalf of all others** )<br>**similarly situated** )<br>)<br>)<br>**v.** )<br>)<br>**Bitconnect International PLC,** *et al.* )<br>)<br>)<br>)<br>**Defendants.** )<br>_____ ) | Case No.: 3:18:CV-00058-JHM-DW |

### MEMORANDUM IN SUPPORT OF
### MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, Brian Paige ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through counsel, submits this memorandum in support of his Motion for Preliminary Injunction pursuant to Fed. R. Civ. P. 65(a) against Defendants Bitconnect International, PLC, Bitconnect LTD and Bitconnect Trading, LTD (collectively, "Bitconnect") and Ryan Maasen ("Maasen") (together, "Defendants") to freeze Defendants' assets and require Defendants to disclose their Bitcoin and other wallet addresses so their money can be monitored.

### I. Introduction

On January 29, 2018, Plaintiff sought a temporary restraining order to freeze Defendants' assets and require the disclosure of Defendants' Bitcoin and other wallet addresses. On January 30, 2018, this Court entered a Temporary Restraining Order (Docket No. 7), granting the relief requested for fourteen (14) days. To protect the ability to recover in equity, Plaintiff and the Class now seek a preliminary injunction that would freeze Defendants' assets and allow for monitoring

of Defendants' accounts until the resolution of this litigation. For the same reasons a temporary restraining order was appropriate, a preliminary injunction is also appropriate.

## II. The Court Can Issue An Injunction to Freeze Assets in this Action for Equitable Relief.

As a general rule, federal courts lack authority to freeze assets of a defendant before the claims have been brought to judgment. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999). "However, when the plaintiff is seeking equitable relief, as opposed to merely legal damages, the federal courts have the authority to issue a preliminary injunction in order to freeze the assets of a defendant if the requirements for a preliminary injunction are otherwise satisfied." *Clayton v. Heartland Resources, Inc.,* 2008 WL 5046806, at *4 (W.D. Ky. Nov. 21, 2008) (citing *Grupo*, 527 U.S. at 324-25).

Here, Plaintiff and the Class seek equitable relief in addition to their legal remedies, and are entitled to an injunction to maintain the status quo until the claims in the Complaint can be resolved. Amongst other claims and remedies sought, Plaintiff alleges violations of federal securities laws, Kentucky securities law, and breach of contract, and requests relief in the form of "specific performance of the contract between Bitconnect and Plaintiff and the Class," as well as "[i]njunctive relief in the form of a rescission, refund or replacement program to make Plaintiff and the Class whole." *See* Class Action Complaint (Docket 1) at 2, 26.

In *Deckert v. Independence Shares Corp*., the Supreme Court held that a claim by a purchaser of a security to rescind a fraudulent sale and obtain restitution of the consideration paid is a claim for equitable relief, and that a preliminary injunction was appropriate to maintain the status quo where there was real risk of insolvency and dissipation. 311 U.S. 282, 288-89 (1940). Likewise, a preliminary injunction is an appropriate remedy where a plaintiff seeks specific performance of a contract. *See Roller Bearing Industries, Inc. v. Paul*, 2010 WL 1257715, at *1

(W.D. Ky. Mar. 26, 2010) (citing *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1222-23 (10th Cir. 2009).

Accordingly, Plaintiff is entitled to a preliminary injunction if the other requirements for a preliminary restraining order have been met.  For the reasons described below, Plaintiff is entitled to such relief.

### III.     A Preliminary Injunction Is Appropriate to Prevent Irreparable Harm.

In considering a preliminary injunction, the Court must consider the following: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent an injunction, (3) whether granting the injunction would cause substantial harm to others, and (4) whether the public interest would be served by granting the injunction. *Ohio Rep. Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (citation omitted).  "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 400 (6th Cir. 1997).

As an initial matter, other Courts have been entering orders similar to the one requested by Plaintiff and the Class to protect consumers from scams related to cryptocurrencies.  For example, on December 4, 2017, in the Eastern District of New York, a District Court entered a temporary restraining order, and later a preliminary injunction, freezing the assets of defendant, PlexCorps, and the individual defendants, Dominic Lacroix and Sabrina Paradis-Royer, as it related to a cyber scam promoting an "Initial Coin Offering" for a new cryptocurrency. *See* Order Granting Temporary Restraining Order entered Dec. 4, 2017 (1:17-cv-7007-CBA) (E.D.N.Y); Order Granting Preliminary Injunction entered Dec. 14, 2017 (1:17-cv-7007-CBA) (E.D.N.Y) (both orders attached as Exhibit 1).

In the present action, Plaintiffs can demonstrate a high likeliness of success on the merits with a very high risk of irreparable injury to Plaintiff and the Class. Absent an injunction, Plaintiff and the Class face a significant risk that Defendants will dissipate their assets or otherwise transfer their money in a way that cannot be traced or recovered. Without an injunction, Plaintiffs may be stripped of their equitable remedies of rescission and restitution of consideration paid. The unique nature of cryptocurrency makes relief here non-burdensome. That is, every transaction on the Bitcoin blockchain and even the exact amount and source of Bitcoin contained in every Bitcoin wallet is fully public information. However, the identity of the wallet holder is not. Plaintiff is simply asking for Defendants to provide a list of their wallets and/or exchange account wallets - something fully available in discovery - to prevent Defendants from dissipating the ill-gotten gains of the scheme it shut down on approximately January 13, 2018.

### A. **Plaintiff Has A Strong Likelihood to Succeed on the Merits.**

Plaintiff's claims will succeed on the merits. The harms alleged in the Complaint (Docket No. 1) make clear that Bitconnect, made up of several British entities, was a pyramid scheme and a Ponzi scheme. In essence, Defendants participated in a so-called "investment" scheme in which it lured in users through promoters, such as Maasen, who endorsed the extraordinary results they had received from Bitconnect. These promoters received a bonus from Bitconnect for each user recruited to Bitconnect.

Bitconnect claimed to offer a community-driven cryptocurrency that allowed users to store and invest their wealth. In its simplest terms, Bitconnect offered and sold investments through its "BitConnect Lending Program." In this "program," users deposited Bitcoin, a credible cryptocurrency, into a Bitconnect depository in exchange for Bitconnect Coin ("BCC"), Bitconnect's own digital currency. Then, users "lent" their BCC back to Bitconnect so that

4

Bitconnect could fund its secret, proprietary trading system called "volatility software." On its website, Bitconnect *guaranteed* an average daily interest rate of 1%, with bonuses, and a return of principal after a certain period of days. Maasen encouraged his viewers, including Plaintiff and the Class, not to keep their investment returns, but instead, to re-invest the daily interest earnings back into Bitconnect. As a result, users never actually made money, but the money generated by the "program" keep getting re-circulated into Bitconnect.

On January 4, 2018, the Texas State Securities Board issued an emergency cease and desist order against Bitconnect for violating state securities law. On January 12, 2018, North Carolina issued a cease and desist order against Bitconnect for violating state securities law. On January 13, 2018, the Bitconnect website went down. At first, Bitconnect claimed to its users that it had been experiencing "server issues," but within a few days, Bitconnect announced the closure of its "lending program," and its promotors, including Maasen, furiously deleted their promotional videos and materials from the internet. When the lending program closed, the value of BCC plummeted from approximately $440 per BCC to approximately $11 per BCC. At that point, Plaintiff and the Class, many of which had invested thousands of dollars, were left with valueless digital tokens.

These allegations rely extensively on information provided on Bitconnect's website, bitconnect.co, and are bolstered by a single remaining video by Maasen, who claimed to have benefited from the fraudulent scheme and urged others to "invest" with Bitconnect. Based on available information, Bitconnect offered and sold securities to Plaintiff and the Class, guaranteed returns on those "investments," but failed to make good on its guarantees or bonuses. Defendants failed to disclose material information to its users, including, but not limited to, the principals of Bitconnect, information regarding the proprietary system it called "volatility software," and that

Bitconnect and its agents had failed to register with appropriate regulatory bodies. To the contrary, Bitconnect touted its "lending program" as a "safe way to earn a high rate of return on . . . investment[s] without having to undergo a significant amount of risk." Based on this fraudulent behavior, Plaintiff and the Class asserted claims for: (1) violation of Kentucky securities law; (2) violation of federal securities law; (3) breach of contract; (4) fraud by concealment; and (5) violation of the Kentucky Consumer Protection Act.

After Texas and North Carolina recognized the dangerous nature of this online operation and took action to protect their citizens, Defendants saw the writing on the wall and quickly shut down their operation. Kentucky and federal securities law does not materially differ from the regulation of securities in North Carolina and Texas, and therefore, it is very likely that Plaintiff and the Class's claims arising from violations of Kentucky and federal securities law have a very high likelihood of success. *See Compare* N.C. Gen. Stat. §§ 78A-1, *et seq.* (requiring registration and honest disclosure when engaging in the sale of any "security," defined to include a note, stock, transferable share, investment contract, or "any interest or instrument commonly known as a security.") *and* Tex. Rev. Civ. Stat. Ann. Art. §§ 581-1, *et seq.* (requiring registration before sale of securities, defined to include share, stock, investment contract, or "any other instrument commonly known as a security," and allowing commissioner to intervene to prevent fraud in the sale or offer of securities); *and* 15 U.S.C. §§ 77a, *et seq.* (requiring registration and honest disclosure when engaging in the sale or offer of any "security" defined to include any note, transferable share, investment contract, or "any interest or interest commonly known as a security.") *and* KRS 292.310, *et seq.* (requiring registration and honest disclosure when engaging in the sale or offer of any "security" defined to include any note, transferable share, investment contract, or "any interest or interest commonly known as a security.").

Plaintiff's contract claims will also likely succeed because the offer of guaranteed returns in exchange for an investment by users created a binding contract that Defendants clearly breached when BCC plummeted to an essentially valueless digital token and failed to provide users with the promised returns.  In sum, success on the merits is very likely.

### B. **Plaintiff Will Suffer Irreparable Injury Absent An Injunction.**

There is significant risk that Bitconnect and its promoters, including Maasen, may dissipate money generated from Plaintiff and the Class or dump it into another scam.  As a result, the legal remedy in this action is inadequate.  *See EBSCO Indus., Inc. v. Lilly*, 840 F.2d 333, 336 (6th Cir. 1988).  Plaintiff will not be fully compensated by money damages because there is a probability that Defendants are attempting to dissipate or conceal the money invested by Plaintiff and the Class.  Without the injunction, Defendants will likely be unable to satisfy a judgment.  Moreover, Kentucky's attachment statute is inadequate here, where there is a likelihood that Defendants may attempt to conceal assets making attachment impracticable, if not impossible.  *See id.*; *see also Clayton v. Heartland Resources, Inc.*, 2009 WL 57140, at *6 (W.D. Ky. Jan. 8, 2009)

As evidence of this, just days after the implosion of Bitconnect, on January 25, 2018, Maasen posted videos on his YouTube.com account promoting a new "lending" site called Davor, which is exactly like Bitconnect.  *See* https://www.youtube.com/watch?v=az7vh1dGIpM (last accessed January 25, 2018).  Available evidence makes clear that Bitconnect has been far from transparent with its users since it has come under scrutiny by North Carolina and Texas.  After the issuance of cease and desist orders, Bitconnect advised its members it would be temporarily shut down to address a server issue.  Within days, it announced the closure of its lending platform, promising repayment of its BCC at $363 per coin.  However, the price of BCC has dropped drastically since this, leaving users with pennies on the dollar of their original investments.



Considering the unreliability and past fraudulent tactics of Defendants, it is imperative to freeze Defendants' assets to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiff and the Class. Requiring Defendants to produce their addresses for their digital wallets will allow the parties to monitor their funds to track any attempts at dissipation.

### C. The Injunction Will Not Cause Harm to Others.

Bitconnect has shut down its website and lending platform, presumably the only business purpose for which it had been created. Accordingly, it is a non-operational business entity, which

8

has exposure to significant liabilities to Plaintiff and the Class. An order forbidding Bitconnect from moving its assets will at worst delay Bitconnect from winding-up its affairs, and at best, provide a maintenance of the status quo for Plaintiff and the Class to recover the billions of dollars illegally obtained through Bitconnect's fraudulent scheme.

With respect to Maasen, the injunction will prevent him from using some of his cryptocurrency assets, but given the likelihood he engaged in illegal promotion and sale of securities by participating in a pyramid and Ponzi scheme, the injury to Maasen is greatly outweighed by protecting the thousands who relied on Maasen's representations when investing in Bitconnect. In addition, as Maasen is promoting another lending site similar to Bitconnect, it is likely he is still actively trading and investing cryptocurrency and not converting this to cash to pay for living expenses.

### D. The Public Will Be Served by Granting the Injunction.

The public interest strongly supports a preliminary injunction order here. Based on available information, thousands of Americans may have invested in Bitconnect and have lost money in its fraudulent scheme. There may be several billion dollars implicated in this litigation, and the public will be best protected by a maintenance of the status quo of a non-operational business and promoter who continues to recklessly promote risky cryptocurrencies without providing full disclosure to his listeners.

### CONCLUSION

By virtue of these facts, Plaintiff and the Class respectfully request that this Court enter a Preliminary Injunction lasting for the duration of this litigation, which would freeze Defendants' assets and require Defendants to provide the Court and parties with tracking information of

Defendants' addresses for their Bitcoin and other digital wallets to allow the parties to monitor Defendants' assets.

Dated this 1st day of February 2018.

Respectfully submitted,

**JONES WARD PLC**

*/s/ Jasper D. Ward IV*
Jasper D. Ward IV
Alex C. Davis
The Pointe
1205 E. Washington Street, Suite 111
Louisville, Kentucky 40206
T: (502) 882-6000
jasper@jonesward.com
alex@jonesward.com
*Counsel for Plaintiff and the Class*


Abigale Rhodes Green
ABIGALE RHODES GREEN INJURY LAW, PLLC
1800 Kentucky Home Life Building
239 S. Fifth Street
Louisville, KY 40202
(502) 736-8159
agreen@arglawfirm.com
*Counsel for Plaintiff and the Class*